UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ROBERT EARL PRATT,

          Plaintiff,

v.

ALICIA HETRICK et al.,

          Defendants.
_____/

Case No. 2:24-cv-107

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Prisoner Counselor Alicia

Hetrick and Corrections Officers Unknown McKinney and Unknown Lemmerman in their personal capacities.

In his memorandum in support of his complaint, Plaintiff alleges that Defendant Hetrick is in a romantic relationship with Defendant McKinney and that they spend the majority of the work day "hanging out together," which causes Defendant Hetrick to neglect her job duties and creates a conflict of interest for Defendant McKinney. (ECF No. 1-2, PageID.11.) Plaintiff asserts that when prisoners approach Defendant Hetrick for help in Defendant McKinney's presence, they are met with "overly aggressive and borderline psychotic behavior on the part of Defendant McKinney. (*Id.*)

Plaintiff states that on March 21, 2024, he attempted to resolve a property issue with Defendant Hetrick after non-party Resident Unit Manager Lacross instructed staff to take Plaintiff's fan. (*Id.*) Plaintiff states that he had legitimately purchased the fan. (*Id.*) During the conversation, Defendant Hetrick became very combative and insulting and threatened to have Plaintiff fired from his work detail, which would result in Plaintiff being placed on punitive 00 status. (*Id.*) Defendant Hetrick stated that she could do whatever she wanted and that it was her "girl's unit," referring to non-party Prisoner Counselor Barbierz. (*Id.*, PageID.11-12.)

Plaintiff attempted to resolve the issue with non-parties Resident Unit Manager Lacrosse and Sergeant Gronin before writing a grievance on Defendant Hetrick on March 21, 2024, which was rejected by non-party Grievance Coordinator Eicker because Plaintiff failed to sign the grievance. (*Id.*, PageID.12, 17.) On March 22, 2024, after Plaintiff filed this grievance, he was moved from G-unit to C-unit at the request of Defendant Hetrick. Upon Plaintiff's arrival in C-unit, Defendants McKinney and Lemmerman seized Plaintiff's property and aggressively ordered Plaintiff to go to bunk 119 and not to return. (*Id.*)

Defendants McKinney and Lemmerman then shook down Plaintiff's property in the C-unit lobby, confiscating and destroying Plaintiff's personal property on camera. (*Id.*) Plaintiff states that there is not an official facility or department policy directing that property be searched upon a prisoner's arrival in a different housing unit. (*Id.*) Defendant Lemmerman threatened to "taze" Plaintiff if he continued to speak to him and called Plaintiff a "bitch" and a "dumb ass troll." (*Id.*) Defendant McKinney then wrote a class II misconduct on Plaintiff in an attempt to cover Defendants' misconduct. (*Id.*) Plaintiff filed a grievance on Defendants Hetrick, McKinney, and Lemmerman. (*Id.*)

Plaintiff attaches a copy of the step I grievance to his complaint, which states:

> After writing a grievance on PC Hetrick, she retaliated against me by having me moved from G-Unit to C-Unit, upon arrival to C-Unit, Officer McKinney and Officer Lemmerman, on camera seized my property. They refused to give any reasonable or policy violating reason why, they can be seen on camera in C-Unit lobby ransacking and taking property that they claim was altered, multiple tickets were written on me when I tried to discuss with them, why were they treating me in the manner that they were, the retaliation by PC Hetrick is further foundated [sic], due to her si[ccing] McKinney who is personally and romantically engaged with Hetrick, this is proven by months of camera footage and Lemmerman who their close friend. This is a serious grievable issue and it needs to be addressed. Retaliation against the exercise of First Amendment rights is itself a violation of the First Amendment.

(ECF No. 1-3, PageID.30.)

Resident Unit Manager Lacrosse denied the grievance at step I, stating that Plaintiff arrived in C-Unit with excessive property, prompting Defendant McKinney to conduct a shakedown. (*Id.*, PageID.32.) Plaintiff filed a step II appeal, asserting that non-party Resident Unit Manager Lacrosse was in the same social circle as Defendants, which was a conflict of interest. (*Id.*, PageID.34.) Plaintiff's step II and III grievance appeals were denied. (*Id.*, PageID.34–35.)

Plaintiff also attaches a copy of the class II disobeying a direct order misconduct written by Defendant McKinney to his complaint. (ECF No. 1-4, PageID.37.) Defendant McKinney described Plaintiff's conduct:

> I directly observed Prisoner Pratt 602402 C119 standing in the C-Unit lobby yelling at myself and [Corrections Officer] Lemmerman. I told Prisoner Pratt to stop yelling in the lobby, Prisoner Pratt continued to yell at myself and Officer Lemmerman. From within 5 feet and direct eye contact I gave Prisoner Pratt a direct order to stop yelling in the lobby. Prisoner Pratt replied "[I'm] not stopping shit," and continued yelling in the lobby. At no time did Prisoner Pratt comply with my order to stop yelling.

(*Id.*)

Plaintiff states that Defendant Hetrick spends most of her time in her office with the door closed on shopping and social media websites and does not spend adequate time assisting prisoners with legal mail, answering notary questions, or making disbursements, and is verbally abusive to Plaintiff and other prisoners, especially in the presence of Defendants McKinney and Lemmerman. (*Id.*, PageID.13.) Plaintiff states that the Warden and Inspector allow Defendants to act as they please without any oversight.

Plaintiff states that Defendants violated his First Amendment right to free speech and his Fourteenth Amendment right to due process. Plaintiff also asserts that Defendants retaliated against him. (ECF No. 1, PageID.3.) Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief. (*Id.*, PageID.4.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Freedom of speech

Plaintiff makes a conclusory assertion that Defendants violated his First Amendment right to freedom of speech. The First Amendment provides: "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the

5

Government for a redress of grievances." U.S. Const. amend. I. However, Plaintiff fails to allege the existence of any policy or rule which censored or prohibited protected speech in any way. Plaintiff does not allege that any property was seized or destroyed based on protected content, or that his mail was censored on that basis. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's First Amendment Free Speech claim is properly dismissed.

### B. Due Process

#### 1. Class II Misconduct

Plaintiff alleges that Defendant McKinney wrote a Class II misconduct on him for disobeying a direct order. To the extent that Plaintiff is seeking to assert a due process claim related to the Class II misconduct ticket, such a claim lacks merit. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995).

First, no matter what happened with respect to any misconduct ticket, the duration of Plaintiff's sentence would not change. Plaintiff is serving sentences of 40 to 60 years for the crime of assault with intent to commit murder as well as shorter sentences for lesser crimes. *See* MDOC Offender Tracking Information System, https:://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=602402 (last visited Feb. 19, 2024). Although there are incentives for serving time without misconducts, those incentives do not impact the duration of the sentence under *Sandin*.

In general, the MDOC no longer rewards prisoners for serving time "misconduct free." Instead, prisoners convicted of crimes committed on or after December 15, 1998, for a particular

6

list of crimes, and on or after December 15, 2000, for all other crimes, are given "disciplinary time" when they are found guilty of a major misconduct. *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); Mich. Comp. Laws § 800.34. Plaintiff is incarcerated for a crime he committed on April 26, 2013. Therefore, he is subject to disciplinary time with regard to his indeterminate sentence. Mich. Comp. Laws § 800.34.

Disciplinary time accrues when a prisoner is found guilty of a major misconduct. A prisoner's accumulated disciplinary time is submitted to the parole board for consideration at parole reviews or interviews. The Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence in the sense contemplated by *Sandin*. *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).

Second, the sanctions for a disciplinary finding of guilt would not rise to the level of atypical and significant hardships. Under MDOC Policy Directive 03.3.105, Attachment D, the maximum sanctions for a Class-I misconduct conviction are as follows: 10 days of punitive segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. The sanctions for Class-II and Class-III misconducts are similar, but with shorter maximum durations.

The most significant sanction and, therefore, hardship, is placement in segregation. The Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will

7

consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). Lesser sanctions of toplock or loss of privileges would certainly be no worse than segregation. Put simply, any penalty Plaintiff might have faced because of his misconduct convictions would not rise to the level of an atypical and significant hardship.

Accordingly, because Plaintiff has failed to identify a liberty interest impacted by any misconduct proceedings, the Court finds that Plaintiff fails to state a plausible Fourteenth Amendment procedural due process claim with respect to his Class II misconduct conviction.

### 2. Confiscation and/or destruction of property

To the extent that Plaintiff is claiming that the shakedown and confiscation / destruction of his property by Defendants McKinney and Lemmerman violated his right to due process such a claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts

8

of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Apr. 26, 2021). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claims regarding the confiscation and/or destruction of his property will be dismissed.

9

### 3. Transfer from G-Unit to C-Unit

To the extent that Plaintiff claims that his transfer from G-Unit to C-Unit at the request of Defendant Hetrick violated his due process rights, the Court notes that such a transfer does not violate due process. Prisoners do not have a liberty interest in remaining at a particular prison facility, and they have no justifiable expectation that they will remain at a particular prison unless found guilty of a misconduct. *Montanye v. Haymes*, 427 U.S. 236, 243 (1976).

The Sixth Circuit has held that a lateral transfer from one prison facility to another cannot form the basis of a retaliation claim, even though such a transfer might have "some effect on [the plaintiff prisoner's] future filing of grievances," and even though this transfer might be intended in part "to give prison staff a respite from [the prisoner's] continuous barrage of grievances." *Brown v. Crowley*, 312 F.3d 782, 802 (6th Cir. 2002) (citing *Ward v. Dyke*, 58 F.3d 271, 274–75 (6th Cir. 1995)).

In this case, Plaintiff's transfer was within the same prison. In addition, Plaintiff does not allege that C-Unit was a higher security level or had any more restrictions than G-Unit. Therefore, Plaintiff's transfer to C-Unit was merely a lateral transfer and did not implicate his rights under the Due Process Clause.

### C. Retaliation

Finally, Plaintiff claims that Defendants retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove

that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff states that after he filed a grievance on Defendant Hetrick on March 22, 2024, he was moved from G-unit to C-unit at the request of Defendant Hetrick. Upon Plaintiff's arrival in C-unit, Defendants McKinney and Lemmerman seized Plaintiff's property and aggressively ordered Plaintiff to go to bunk 119 and not to return. (ECF No. 1-2, PageID.11–12.) Defendants McKinney and Lemmerman then shook down Plaintiff's property in the C-unit lobby, confiscating and destroying Plaintiff's personal property on camera. (*Id.*, PageID.12.) Defendant Lemmerman threatened to "taze" Plaintiff if he continued to speak to him and called Plaintiff a "bitch" and a "dumb ass troll." (*Id.*) Defendant McKinney then wrote a class II misconduct on Plaintiff in an attempt to cover Defendants' misconduct. (*Id.*) Plaintiff filed a grievance on Defendants McKinney and Lemmerman. (*Id.*)

The Court notes that the filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). To the extent that Plaintiff's March 22, 2024, grievance on Defendant Hetrick was nonfrivolous, Plaintiff was engaged in constitutionally protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the

11

defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

To the extent that Plaintiff is claiming that his transfer from G-Unit to C-Unit was retaliatory, the Court notes that this appears to have been a lateral transfer. Plaintiff does not allege that C-Unit was a higher security unit or that conditions were more restrictive than those in G-Unit. A transfer from one general population unit to another general population unit is not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. Therefore, Plaintiff's transfer to C-Unit does not appear to have been adverse.

Plaintiff also alleges that Defendants McKinney and Lemmerman confiscated and/or destroyed his property upon his arrival in C-Unit and that Defendant McKinney wrote a misconduct on him in order to cover up the Defendant's misconduct. The Court notes that a search may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*, where the search leaves a cell in disarray and results in the confiscation or destruction of materials. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Moreover, the issuance of a minor misconduct ticket may be sufficiently adverse where a prisoner is subject to loss of privileges and confinement to his cell. *Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018). Therefore, Plaintiff's allegations against Defendants McKinney and Lemmerman, if true, show that they engaged in sufficiently adverse action to support a retaliation claim.

Finally, as noted above, Plaintiff must allege facts showing that the Defendants' adverse action was motivated, at least in part, by Plaintiff's protected conduct. *Thaddeus-X*, 175 F.3d at 394. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated

12

by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

In addition, although temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough.." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

Plaintiff merely alleges the ultimate fact of retaliation in this action. The attachments to Plaintiff's complaint indicate that his property was subject to search and seizure because he arrived in C-Unit with excessive property and that he received a misconduct ticket because he did not comply with a direct order to stop yelling in the lobby. (ECF No. 1-3, PageID.32; ECF No. 1-4, PageID.37.) Plaintiff does not dispute either of these assertions but merely states that there is no policy requiring the search of a prisoner's property upon transfer to a different unit in the prison. Plaintiff has not presented any facts whatsoever to support his conclusion that Defendants retaliated against him because of his grievance against Defendant Hetrick. Accordingly, he fails to state a retaliation claim against Defendants. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   February 27, 2025                             /s/ Paul L. Maloney
                                                             Paul L. Maloney
                                                             United States District Judge